UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KAREN LITTRELL, | ) |
|     Plaintiff, | ) ) ) |
| v. | )    Case No. 4:23-CV-095-RHH |
| MARTIN O'MALLEY,[1] <br> Commissioner of Social Security, | ) ) ) ) |
|     Defendant. | ) ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff Karen Littrell's appeal regarding the denial of Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 10.) The Court has reviewed the parties' briefs and the entire administrative record, including the transcript and medical evidence. Based on the following, the Court will affirm the Commissioner's denial of Littrell's application.

**I.   Background**

The Court adopts the facts set forth in Littrell's statement of facts (ECF No. 20-1) and Defendant's response (ECF No. 21-1). Together, these statements provide a fair description of the record before the Court. Specific facts will be discussed as needed to address the parties' arguments.

---

[1] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley shall be substituted for Kilolo Kijakazi as the defendant in this suit. *See* 42 U.S.C. § 405(g).

On or about July 29, 2020, Littrell applied for SSI, alleging that she has been unable to work due to disability since June 30, 2010. (Tr. 149.) She later amended her alleged onset date of disability to July 28, 2019.[2] Littrell alleged disability due to arthritis, degenerative disc disease, FSGS kidney disease, sarcoidosis, anxiety, depression, obsessive compulsive disorder, fibromyalgia, and bipolar affective disorder. (Tr. 157.) Her application was initially denied and denied again on reconsideration. (Tr. 162, 175.) Then, she filed a request for Hearing by Administrative Law Judge (ALJ). (Tr. 226-227.) On November 15, 2021, the ALJ held a hearing on Littrell's claim. (Tr. 53-94.) Littrell was represented by counsel at the hearing, and an impartial vocational expert testified. *Id.*

In a decision issued on January 6, 2022, the ALJ found Littrell was not disabled as defined in the Act before September 12, 2021, but became disabled on that date and continued to be disabled through the date of decision. (Tr. 15-37.) On March 10, 2022, Littrell filed a Request for Review of Hearing Decision with the Social Security Administration's (SSA) Appeals Council. (Tr. 279-281.) On January 4, 2023, the Appeals Council denied Littrell's request for review, and adopted the ALJ's decision in full. (Tr. 3-9.)

**II.      Standard for Determining Disability Under the Act**

The Social Security Act defines as disabled a person who is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

---

[2] Littrell also applied for disability insurance benefits (DIB) under Title II of the Social Security Act, but waived her DIB claim at the hearing stage when she amended her alleged onset date. (Tr. 18, 59.)

work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Social Security Administration ("SSA") uses a five-step analysis to determine whether a claimant seeking benefits is in fact disabled. 20 C.F.R. § 404.1520(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities and meets the durational requirements of the Act. 20 C.F.R. § 404.1520(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix of the applicable regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments do not meet or equal a listed impairment, the SSA determines the claimant's residual functional capacity ("RFC") to perform past relevant work. 20 C.F.R. § 404.1520(e).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant meets this burden, the analysis proceeds to step five. At step five, the burden shifts to the Commissioner to establish the claimant maintains the RFC to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfied all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v).

**III.    The ALJ's Decision**

Applying the foregoing five-step analysis, the ALJ here found that Littrell has not engaged in substantial gainful activity since July 29, 2020, the application date. (Tr. 21.) Next, the ALJ

3

found that Littrell has the following severe impairments: nephrotic syndrome, sarcoidosis, obesity, chronic kidney disease (stage 3), gout, and chronic obstructive pulmonary disease (COPD). (Tr. 21.) The ALJ found that Littrell's essential hypertension, hyperlipidemia, and gastroesophageal reflux disorder (GERD) are non-severe. The ALJ also found that Littrell's bipolar affective disorder, major depressive disorder, and generalized anxiety disorder were non-severe impairments. (Tr. 21-22.)

The ALJ determined that Littrell did not have an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 23.) The ALJ also determined that Littrell had the residual functional capacity to perform light work with limitations. Specifically, the ALJ found that

> The claimant can lift up to 20 pounds occasionally; lift/carry up to 10 pounds frequently. She can stand/walk for about 2 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks. She can occasionally climb ramps, stairs, but never ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to extreme heat, humidity, and excessive vibration; and irritants, such as fumes, odors, dust, gases, and poorly ventilated areas. She should avoid concentrated exposure to operational control of moving machinery. She should avoid unprotected heights and exposure to hazardous machinery.

(Tr. 24.) The ALJ found that Littrell was unable to perform any past relevant work. (Tr. 28.) Prior to September 12, 2021, Littrell was considered a younger individual. On September 12, 2021, her age category changed to an individual closely approaching advanced age. She has a high school education or above. (Tr. 28.) Prior to the established onset date, Littrell's job skills did not transfer to other occupations. Based on the foregoing, the ALJ found that there were jobs exist in significant numbers in the national economy that Littrell could perform prior to September 12, 2021. (Tr. 28.) These jobs include product inspectors (Dictionary of Occupational Titles (DOT) No. 669.687-014, sedentary exertion level, SVP 2, approximately 21,500 jobs in the national economy), production

4

worker (DOT No. 706.684-03, sedentary, SVP 2, approximately 34,000 jobs in the national economy), and assembler (DOT No. 734.687-018, sedentary, SVP 2, approximately 65,000 jobs in the national economy). (Tr. 29.) Therefore, the ALJ concluded that Littrell was not disabled, as defined in the Act, prior to September 12, 2021, but became disabled on September 12, 2021 and has continued to be disabled through January 6, 2022. (Tr. 29-30.)

### IV.     Standard for Judicial Review

The standard of review is narrow. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). This Court must affirm the Commissioner's decision if it complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942. *See also Biestek*, 139 S. Ct. at 1154 ("Substantial evidence . . . means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consolidated Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations

5

regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

## V.     Discussion

Littrell challenges the ALJ's opinion in three ways: she contends that the ALJ's decision lacks a proper pain evaluation; the ALJ failed to properly consider the medical evidence, and the ALJ's RFC is not supported by substantial evidence. The Court will address each argument in turn.

### A. Evaluation of Subjective Complaints

Littrell contends that the ALJ did not properly evaluate her subjective complaints of pain. Specifically, Littrell contends the ALJ relied on objective findings and did not discuss any other factors in discounting her reported pain.

In considering subjective complaints, the ALJ must fully consider all of the evidence presented, including the claimant's prior work record, and observations by third parties and treating examining physicians relating to such matters as:

(1) The claimant's daily activities;
(2) The subjective evidence of the duration, frequency, and intensity of the claimant's pain;
(3) Any precipitating or aggravating factors;
(4) The dosage, effectiveness, and side effects of any medication; and
(5) The claimant's functional restrictions.

*Polaski v. Heckler,* 725 F.2d 1320, 1322 (8th Cir. 1984). The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004). The ALJ need only acknowledge and consider those factors before discounting a claimant's subjective

6

complaints. *Id.* Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir. 1988). "While the extent of daily living activities does not alone show an ability to work, such activities may be considered along with other evidence when evaluating a claimant's credibility." *Walker v. Colvin*, 124 F.Supp. 3d 918, 936 (E.D. Mo. 2015).

If the evidence as a whole "undermines" or "cast[s] doubt on" a claimant's testimony, an ALJ may decline to credit a claimant's subjective complaints. *Id.* If the ALJ explicitly discredits a claimant's subjective complaints and gives good reasons, the Eighth Circuit has held it will defer to the ALJ's judgment, even if the ALJ does not cite to *Polaski* or discuss every factor in depth. *See Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007); *Strongson*, 361 F.3d at 1072.

Here, "[a]fter careful consideration of the evidence," the ALJ concluded that Littrell's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not fully supported for the reasons explained in this decision." (Tr. 25.) Prior to this statement, and consistent with the Eighth Circuit's requirements, the ALJ recognized his obligation to assess Littrell's symptoms based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and SSR 16-3p. (Tr. 24.) *See Schultz v. Astrue,* 479 F.3d 979, 983 (8th Cir. 2007) (citation omitted) (recognizing 20 C.F.R. § 404.1529 "largely mirror[s] the *Polaski* factors").

The Court finds that the ALJ's evaluation of Littrell's subjective complaints "is supported by substantial evidence on the record as a whole," which is sufficient to merit the deference of this Court. *Swink v. Saul*, 931 F.3d 765, 771 (8th Cir. 2019); *see also Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019) ("[A]n ALJ need not explicitly discuss each factor ... and we will defer to credibility determinations that are supported by good reasons and substantial evidence." (internal citation omitted)); Tr. 25-27 (citing objective medical evidence, Littrell's reported

7

activities of daily living, her Function Report, her testimony, and the reported effectiveness of treatment).

## B. Evaluation of Medical Opinions

Littrell contends that the ALJ failed to properly evaluate any of the medical opinion evidence in conformance with the applicable regulations. The Commissioner's regulations provide that, for claims filed on or after March 27, 2017, ALJs will not defer to or give any specific evidentiary weight, including controlling weight, to any medical opinion. *See* 20 C.F.R. § 416.920c(a) (2017). Instead, ALJs must evaluate the persuasiveness of medical opinions and prior administrative medical findings in light of several factors, the most important of which are supportability and consistency with the record. 20 C.F.R. § 416.920c(a)-(c) (2017). ALJs must explain how they considered the factors of supportability and consistency in their decisions, but need not explain how they considered the other factors. 20 C.F.R. § 416.920c(b) (2017).

For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical findings will be." 20 C.F.R. §§ 404.1520c (c)(1); 416.920c (c)(1). Thus, supportability is an assessment of how well a medical source supported and explained his or her opinion. *Daniels v. Kijakazi*, No. 21 Civ. 712 (GWG), 2022 WL 2919747, at *5, (S.D.N.Y. July 26, 2022).

The regulations provide that "consistency" means "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c (c)(2); 416.920c (c)(2). "Thus, '[c]onsistency is an all-encompassing inquiry focused on how well a medical source is

8

supported, or not supported, by the entire record, not just what a medical source had available to them.'" *Daniels*, 2022 WL 2919747, at *5 (quoting *Cuevas v. Comm'r of Soc. Sec.*, 2021 WL 363682, at *10 (S.D.N.Y. Jan. 29, 2021)).

"Once the ALJ has decided how much weight to give a medical opinion, the Court's role is limited to reviewing whether substantial evidence supports this determination, not deciding whether the evidence supports the plaintiff's view of the evidence." *Beamer v. Saul*, No. 2:18-CV-00094 JAR, 2020 WL 1511350, at *7 (E.D. Mo. Mar. 30, 2020) (citation omitted). *See also Couch v. Berryhill*, No. 2:18 CV 46 DDN, 2019 WL 1992623, at *6 (E.D. Mo. May 6, 2019) (same).

<u>Medical Opinions of State Agency Consultants</u>

First, Littrell argues the ALJ failed to explain how supportability and consistency were considered in evaluating any of the non-examining state agency physician opinions, instead the ALJ only made conclusory statements. Here, with regard to the state agency psychological consultants (Charles Watson, PsyD and Margaret Sullivan, PhD), the ALJ stated:

> Based on a review of the records, including the psychiatric records, the State agency psychologist at the initial review found medically diagnosed impairments of depressive, bipolar, and related disorders and anxiety and obsessive compulsive disorders, but concluded the claimant has only mild limitations in all functional areas and, therefore, does not have a severe psychological impairment. On reconsideration, the State agency psychologist also found that the claimant is no more than mildly limited due [to] her psychiatric symptoms. (Exhibits C7A, C8A, C11A, & C12A) These opinions are persuasive because they are consistent with the objective medical records.
> . . .
> As described above, the findings of "mild" limitations in all areas of functioning and no severe mental impairment on both initial review and reconsideration by the State agency psychological consultants are consistent with and supported by the evidence; therefore, they are persuasive.

(Tr. 22, 27.)

With respect to physical limitations, the state agency medical consultant, Nancy Ceaser, MD, opined that Littrell could stand and/or walk and sit for about 6 hour in an 8-hour workday.

9

She also opined Littrell could occasionally climb ramps, stairs, ladders, ropes, or scaffolds, and had no environmental limitations. (Tr. 161.) On reconsideration, another state agency medical consultant, Judee Bland, MD, had the same opinions, except Dr. Bland added environmental limitations. (Tr. 172-73). With regard to their opinions, the ALJ stated:

> The State agency medical consultant at the initial determination opined that the claimant can perform light exertional work, but can occasionally climb ramps, stairs, ladders, ropes, or scaffolds and occasionally balance, stoop, kneel, crouch and crawl. The State agency medical consultant at the reconsideration determination opined that the claimant can perform light exertional work, but can occasionally climb ramps, stairs, ladders, ropes or scaffolds and occasionally balance, stoop, kneel, crouch and crawl. In addition, the medical consultant opined that the claimant should avoid concentrated exposure to humidity and irritants. The opinions of the State agency medical consultants with regard to both the exertional level and postural limitations are not persuasive because additional medical records submitted after their opinions were rendered on initial review and reconsideration indicate the claimant has additional physical limitations. For instance, she cannot reasonably be expected to climb ladders, ropes, or scaffolds given her obesity. (Exhibits C7A, C8A, C11A, & C12A)

(Tr. 27.)

As stated above, Littrell challenges the supportability and consistency of the state agency opinions, alleging the ALJ's decision contains only conclusory statements. This assertion overlooks the medical records examined by each of the four physicians. With respect to the opinions of psychological consultants, Littrell's argument also overlooks the absence of other opinions suggesting greater mental limitations. The ALJ noted the consultants reviewed the records available to them, found medically diagnosed impairments, but Littrell only had mild limitations in each functional area, and her mental impairments were considered non-severe. The ALJ followed the regulations in finding the opinions of the psychological consultants persuasive because they were consistent with and supported by the evidence of record.

In evaluating the state agency medical consultant opinions, the ALJ found them to be not persuasive because the physicians found fewer limitations than the ALJ deemed appropriate, and

the ALJ determined that subsequent records not available to Drs. Ceaser and Bland suggested additional limitations. Namely, Littrell cannot climb ladders, ropes, or scaffolds given her obesity. Littrell argues that newer medical evidence "did not demonstrate the plaintiff was all of a sudden diagnosed with obesity, nothing in the new medical evidence suggested a new impairment that did not exist when the state physicians issued their opinions." (ECF No. 20 at 6.) However, newer evidence did suggest a higher BMI than the BMI in the medical records reviewed by the consultants. (*See, e.g.*, Tr. 61, 907, 917.) Therefore, the ALJ found the medical consultants' opinions imposing a less restrictive RFC to be not persuasive because they were inconsistent with the evidence in the record that indicated Littrell had more severe limitations due to her obesity. The ALJ certainly could have gone into further depth regarding his analysis. Nevertheless, on this record, the ALJ considered the supportability and consistency factors in accordance with the applicable regulations. *See* C.F.R. §§ 404.1520c(b)(2), 404.1520c(c)(1)-(2).

<u>Medical Opinion of Treating Physician</u>

Lacy Hosay, FNP completed a Medical Source Statement – Physical dated November 12, 2021. (Tr. 1032-1034.) She wrote that Littrell's onset date was February 7, 2017. (Tr. 1034.) FNP Hosay wrote that Littrell's diagnoses are pulmonary sarcoidosis, ankylosing spondylitis, HLA antigen present, hypertension, focal segmental glomerulosclerosis, IBS, OCD, depression, and indicated additional diagnoses were in an attachment. She listed Littrell's symptoms as chronic pain with fatigue and bilateral lower extremity edema, intermittent shortness of breath, and GI symptoms including fluctuating diarrhea and constipation and abdominal pain. She wrote that Littrell's treatment includes antihypertensives and antidepressants, which can cause fatigue, lightheadedness, and dizziness. Her rosuvastatin can cause myalgia and worsening pain. She opined Littrell's symptoms would interfere with her attention and concentration more than 20% of

11


the workday. She opined that Littrell can lift and carry less than 10 pounds, can sit for less than 20 minutes at a time, and can sit in total for less than 2 hours of an 8-hour workday. (Tr. 1032.) She opined that Littrell can walk less than one block without rest or severe pain, can stand for less than 20 minutes at a time, and can stand and walk less than 2 hours in an 8-hour workday. She opined Littrell must get up and walk around for less than 20 minutes in an 8-hour day, and no more than ten minutes at a time. (Tr. 1033.) She opined that Littrell can reach, handle and finger for less than 2 hours of an 8-hour work day, and will need 3 or more unscheduled breaks lasting on average 120 minutes per break. (Tr. 1033.) She wrote that Littrell needs a cane or other assistive device for standing or walking, and will need to prop her feet up intermittently for symptom relief. (Tr. 1033.) She opined that Littrell will be late, leave early, or miss work three times a month or more due to chronic fatigue, pain, edema, limited mobility, intermittent shortness of breath and GI symptoms. When asked about other reasons she may have difficulty working, Hosay noted Littrell has depression and anxiety related to her chronic medical conditions. (Tr. 1034.)

The ALJ properly focused on the supportability and consistency of FNP Hosay's opinion. "The paragraph concerning the ALJ's evaluation of [a medical] opinion cannot be read in isolation but must be read as part of the overall discussion of plaintiff's RFC assessment." *Trosper v. Saul*, 2021 WL 1857124, at *5 (E.D. Mo. May 10, 2021). The ALJ determined that Hosay's opinion was not persuasive because it was inconsistent with the objective medical evidence and her own treatment notes. (Tr. 27.) The ALJ specifically noted that the limitations Hosay found for being off work, her ability to sit, stand, or walk less than two hours a day, needing additional unscheduled breaks, and needing a cane "seem speculative given the lack of documentation supporting these limits." (*Id.*) Indeed, the ALJ explained that although Hosay reported Littrell needs an assistive device for standing or walking, this was not supported by Hosay's treatment records and was

12

inconsistent with the record as a whole: "nothing in the primary care or other medical records indicating the claimant has reported using a cane or crutches or has been observed using a cane or crutches, much less that she has been advised that she needs to use an ambulatory advice of any kind." (Tr. 26.) *See, e.g., McClellan v. Kijakazi*, 2021 WL 4198390, at *3 (W.D. Mo. Sept. 15, 2021) ("By stating that Plaintiff's physical examinations 'do not show the level of dysfunction [Plaintiff] suggested,' the ALJ sufficiently considered and articulated the consistency of [Plaintiff's] medical opinion with other evidence in the record."). The ALJ pointed out that Hosay "lists diagnoses, symptoms, and limitations (IBS) which are not mentioned in the treatment notes supplied." (Tr. 27.) The ALJ also states that Hosay lists side effects that *can be caused* by Littrell's medications, but Littrell does not actually complain of these symptoms to her providers. (Tr. 27.) Littrell argues that the ALJ's evaluation is factually inaccurate because Hosay's medical records mention the diagnosis of IBS several times. (ECF No. 20 at 7, citing Tr. 804-820.) The Commissioner responds that although Hosay suggests IBS as a diagnosis, she does not treat Littrell for IBS during the relevant time period. This is supported by the record, which reveals that IBS is documented in the medical records throughout 2019, before Littrell's 2020 application for benefits. *See Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989) (using SSI application date to mark the beginning of the relevant time period). Even if 2019 was within the relevant time period, Littrell did not complain about any IBS symptoms or get treatment for IBS during the 2019 visits. (Tr. 804-820.) In the subjective portion of the visit records, Littrell repeatedly denied abdominal pain, diarrhea, or constipation, and Hosay documented that Littrell "reports stable symptoms" and/or "no reports of diarrhea or constipation noted" related to her history of IBS. (Tr. 802, 807, 809, 810, 812, 813, 815, 817, 819, 820.)

13

The ALJ appropriately evaluated FNP Hosay's opinion and addressed its inconsistency with the other medical opinion evidence of record. *See Tindell v. Barnhart*, 444 F.3d 1002, 1006 (8th Cir. 2006) ("It is the ALJ's function to resolve conflicts among the various treating and examining physicians") (internal quotation omitted). The ALJ did not commit reversible error simply because he weighed FNP Hosay's Mental Source Statement differently than Littrell. *See Lawrence v. Saul*, 970 F.3d 989, 996 (8th Cir. 2020) (upholding the ALJ's decision when the ALJ acknowledged the medical evidence noted by the plaintiff but placed different and permissible weight on the evidence). The Court finds no error in the ALJ's evaluations of the medical opinions.

### C. Evaluation of RFC

Littrell finally asserts that the RFC formulated by the ALJ is not supported by substantial evidence. Specifically, Littrell contends the ALJ erred in developing his own RFC because an RFC is a medical question, and Littrell found the state agency medical consultants and the treating medical provider's opinions to be not persuasive. Littrell also argues that the decision focused only on medical evidence from the application date, when evidence from before the application date reflected the need for medication adjustments, complaints of panic attacks, and other symptoms the ALJ indicated that Littrell was not reporting to her psychiatrist.

RFC is what a claimant can still do despite his limitations. *See* 20 C.F.R. § 404.1545(a). "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations." *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016) (citation omitted). "'Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.' However, there is no requirement that an RFC finding be supported by a specific medical opinion."

14

*Id.* at 932 (citation omitted). "[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007) (citation omitted).

Contrary to Littrell's argument, the evidence before the Court demonstrates that the ALJ considered, evaluated, and incorporated the persuasive medical opinion evidence, the objective medical evidence, and Littrell's testimonial evidence when fashioning the RFC. While the ALJ did not find the treating physician's opinion to be persuasive, an ALJ is "not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011). Instead, an ALJ may properly develop an RFC based on all of the evidence. *Lockwood v. Colvin*, 627 F. App'x 575, 576 (8th Cir. 2015).

Additionally, the Court is not persuaded by Littrell's argument regarding the ALJ's focus on medical evidence from the application date. Littrell waived her DIB claim; therefore, the ALJ only considered whether Littrell was eligible for SSI benefits. SSI benefits are not payable before an application is filed. *See* 20 C.F.R. § 416.335. Therefore, the relevant time frame for Littrell's SSI claim is from July 29, 2020 (the date of the SSI application) to January 6, 2022 (the date of the ALJ's decision). (Tr. 18, 30, 299.) *See Cruse*, 867 F.2d at 1185 (using SSI application date to mark the beginning of the relevant time period); *Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013) (using the date of the ALJ's decision on the SSI claim to mark the end of the relevant time period). The record in this case contains voluminous medical records, including records dating back to 2017, despite a previous ALJ decision finding Littrell not disabled through June 27, 2019. (Tr. 127-136.) The ALJ considered the evidence submitted, but appropriately focused his discussion in

15

the 13-page opinion on evidence within the relevant time period. In sum, the ALJ did not err in formulating Littrell's RFC and determining whether Littrell is disabled.

The Court acknowledges that the record contains conflicting evidence, and the ALJ could have reached a different conclusion. However, this Court's task is not to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision merely because it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011); *see also Adkins v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 547, 550 (8th Cir. 2018) ("[I]t is not the function of a reviewing court to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record as a whole which supports the decision of the ALJ.").

## VI.     Conclusion

Having reviewed the entire record, the Court finds that the ALJ made a proper RFC determination based on a fully and fairly developed record. Consequently, the Court determines that the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that the relief requested in Littrell's Complaint and Brief in Support of Complaint is  **DENIED**. (ECF Nos. 1, 20.)

**IT IS FURTHER ORDERED** that the decision of the Commissioner is **AFFIRMED**.

Dated this 21st day of March, 2024.

RODNEY H. HOLMES
UNITED STATES MAGISTRATE JUDGE